## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| LAURA HORNER, on behalf of herself and all others similarly situated, | : | Civil Action No. |
| | : | |
| Plaintiff, | : | <u>CLASS ACTION</u> |
| | : | |
| vs. | : | |
| | : | |
| WARRIOR SPORTS, INC. d/b/a WARRIOR LACROSSE; and NEW BALANCE ATHLETIC SHOE, INC. | : | <u>JURY TRIAL DEMANDED</u> |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Plaintiff Laura Horner ("Plaintiff") brings this action individually and on behalf of all other persons similarly situated, by and through her attorneys, against Defendants Warrior Sports, Inc. ("Warrior") and New Balance Athletic Shoe, Inc. ("New Balance") (collectively "Defendants"), and alleges the following based upon personal knowledge as to her own acts, and information and belief as to all other matters based upon, *inter alia*, the investigation of counsel and public statements issued by Warrior and/or New Balance.

## <u>INTRODUCTION</u>

1.       This is a class action lawsuit brought by Plaintiff on behalf of herself and a class of persons who purchased Warrior Regulator model lacrosse helmets developed, manufactured, and marketed by Defendants. Defendants hold themselves out to the public as premier manufacturers of innovative, high performance, cutting edge equipment, footwear and apparel for lacrosse, including lacrosse helmets.

2.      All levels of organized lacrosse, including US Lacrosse ("USL"), The National Federation of State High School Associations ("NFHS"), and the National Collegiate Athletic Association ("NCAA"), require that all helmets used in play must meet the minimum applicable guidelines and safety standards set forth by the National Operating Committee on Standards for Athletic Equipment ("NOCSAE"). The NOCSAE standards for lacrosse helmets set a minimum threshold for safety, with a focus on helmet stability and impact attenuation.

3.      Responsibility for testing to ensure compliance with the applicable NOCSAE guidelines rests with the equipment manufacturers. If a company affixes the NOCSAE seal to its helmets, it is representing that all of those helmets meet the applicable NOCSAE standards.

4.      Warrior enjoys a sizeable portion of the market share for lacrosse helmets. The Warrior Regulator helmet, introduced in October of 2013, was marketed and sold as meeting or exceeding the applicable NOCSAE standards for lacrosse helmets. A "MEETS NOCSAE STANDARD" logo was emblazoned on the exterior of all Warrior Regulator helmets.

5.      On November 24, 2014, NOCSAE announced that the Warrior Regulator lacrosse helmet had been improperly certified by its manufacturer as compliant with NOCSAE standards. According to its press release, NOCSAE conducted its own independent investigation and evaluation of the Warrior Regulator helmet, which included its own review of Warrior's internal certification testing and quality control data as well as NOCSAE's own contracted laboratory testing, and determined that the Warrior Regulator helmet did not meet NOCSAE standard ND041 applicable to lacrosse helmets, contrary to Defendants' representations. As a result, NOCSAE voided Warrior's NOCSAE certification for the Warrior Regulator and advised the USL, NCAA, NFHS, and other governing organizations of its findings and determinations.

- 2 -

Plaintiff's Class Action Complaint

6.      On December 4, 2015, NOCSAE sued Warrior in the United States District Court for the Western District of Missouri, seeking injunctive and declaratory relief under applicable trademark, breach of contract, and consumer protection laws for using the NOCSAE symbol on Regulator helmet when, in fact, the helmets do not meet the applicable NOCSAE standards.

7.      Subsequent to NOCSAE's decertification of the Warrior Regulator helmet, the USL, NCAA and numerous other lacrosse governing bodies have advised their members that Warrior Regulator helmets will not be permitted to be worn during lacrosse activities under their purview.

8.      As a result of Defendants' fraudulent representations concerning the Warrior Regulator helmet and its compliance with NOCSAE regulations, Plaintiff and the Class spent hundreds of dollars on each Warrior Regulator helmet that they believed to be impact-resistant, and at a minimum, would be permitted for use in sanctioned lacrosse activities, but which have now been found not to meet minimum NOCSAE safety standards and are no longer allowed to be used in most lacrosse activities due to their NOCSAE decertification.

9.      Defendants have not offered to refund the purchase prices for the Warrior Regulator helmets or replace the Regulator helmets with helmets that meet NOCSAE standards. Instead, Defendants have urged customers to spend additional money to purchase Warrior's new model of lacrosse helmet, the Regulator 2. Furthermore, Defendants have disclosed that current inventory levels of the Regulator 2 are not sufficient to keep up with consumer demand for a replacement helmet.

10.     Defendants' affirmative misrepresentations concerning the Warrior Regulator helmets' performance and NOCSAE certification misled Plaintiff and the Class concerning the true nature of the Warrior Regulator helmets.

11.     As a result of Defendants' affirmative misrepresentations concerning the Warrior Regulator helmets and their unfair, deceptive and fraudulent business practices, Plaintiff and the Class have suffered injury in fact and damages.  Plaintiff and the Class members did not receive the caliber of helmets they paid for; were exposed to increased safety risks by using the Warrior Regulator helmets without knowledge of their inability to meet even minimum NOCSAE safety standards, and have been deprived of the future use of the Warrior Regulator helmets due to Defendants' affirmative misrepresentations about the helmets' quality and NOCSAE compliance.

12.     Accordingly, Plaintiff brings this action to redress damages to herself and the Class due to Defendants' common law fraud, negligent misrepresentation, breach of warranty, unjust enrichment, and violations of the Michigan Consumer Protection Act ("MCPA").

## PARTIES

**Plaintiff**

13.     Plaintiff Laura Horner is a consumer who is a resident of Bloomfield Hills, Michigan. Plaintiff Horner purchased the Warrior Regulator helmet for her son's personal use in organized lacrosse activities.

14.     Plaintiff Horner purchased the Warrior Regulator helmet for her son based on Defendants' representations that it provided superior impact protection and met NOCSAE's certification safety standards, a requirement of all helmets worn in Plaintiff's son's lacrosse activities.

15.     Shortly after NOCSAE's November 24 announcement, Plaintiff was informed that the Warrior Regulator helmet she had purchased was no longer permitted to be used in Plaintiff's son's lacrosse activities because the helmet's NOCSAE certification had been voided.

Plaintiff's Class Action Complaint

16.     To date, Plaintiff's son has been unable to use his Warrior Regulator helmet for lacrosse activities.

**Defendants**

17.     Defendant Warrior Sports, Inc. d/b/a Warrior Lacrosse ("Warrior") holds itself out as a premier manufacturer of innovative, high performance, cutting-edge equipment, footwear and apparel for lacrosse and hockey, including the Regulator helmet. Warrior was founded in 1992 and is headquartered in Warren, Michigan.

18.     Defendant New Balance Athletic Shoe, Inc., ("New Balance") is the parent company of Warrior Sports, and holds itself out as a leading manufacturer and marketer of athletic equipment and apparel. The New Balance family of brands includes Warrior, PF Flyers, Dunham, Cobb Hill, Brine, and Aravon. New Balance acquired Warrior in 2004, and is a privately-held company headquartered in Boston, Massachusetts.

19.     Warrior's marketing materials represented that the Regulator helmet "meets or exceeds all NOCSAE standards" and that the helmet "blends performance and fit with road-tested force reduction for the game's hardest hits." Furthermore, Warrior's website represents that "corner ripping, ankle-breaking, bone-crushing hits, ridiculous takeaways, ground ball vacuums, and walls in the cage is what we're all about."

20.     Defendants hold themselves out to be competent and honest testers of the lacrosse helmets that they manufacture and that their certifications of compliance with NOCSAE safety standards are delivered to consumers with integrity and accuracy. Since the NOCSAE product certification procedure is dependent on self-testing by manufacturers such as Defendants, the lack of competency and honesty in the testing process subjects the consuming public to extraordinary safety hazards.

Plaintiff's Class Action Complaint

## JURISDICTION AND VENUE

21.     Defendants Warrior and New Balance are subject to personal jurisdiction in this Court because they have engaged in systematic and continuous contacts with this district by virtue of their business activities and product sales in this district. Defendant Warrior is headquartered in this district.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

23.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

## FACTUAL ALLEGATIONS

### A.  Background

24.     Lacrosse is among the nation's fastest-growing youth sports, especially among youths whose parents are looking for a sport perceived to be safer alternative to football.

25.     According to the National Federation of State High School Associations ("NFHS"), in the 2013-2014 academic year, 188,689 boys and girls played lacrosse at the high school level, nearly double the number of participants from a decade ago.

Plaintiff's Class Action Complaint

26.     Lacrosse is also gaining increasing popularity at the college level, with many colleges and universities increasing their investments in lacrosse programs and providing additional scholarship opportunities for lacrosse athletes.

27.     With increasing popularity across all levels of the sport, the sale of lacrosse-related goods has become lucrative business for sporting goods manufacturers. According to the Sports and Fitness Industry Association, sales of lacrosse equipment increased from $59 million in 2008 to $80 million in 2013.

28.     The rules of lacrosse govern the administration and conduct of games, including helmets and other equipment used in the game. Three organizations write rules for lacrosse played in the United States: United States Lacrosse ("USL"), founded in 1998, is the national governing body of lacrosse, and sets forth youth rules for boys and girls, high school rules for girls, non-varsity collegiate rules for women, and post-collegiate rules for men and women; the NFHS sets forth rules for high school boys; and the National Collegiate Athletic Association ("NCAA") sets forth varsity collegiate rules for men and women. Representatives from USL sit on rules-writing committees of the NFHS and NCAA, and the three organizations often work together on rule development and player safety.

29.     Each of these organizations looks to NOCSAE for minimum safety standards for lacrosse helmets used in play. The rules mandate that all helmets used in play must be NOCSAE certified or otherwise meet the applicable NOCSAE standards for lacrosse helmets.

**B.  NOCSAE and NOCSAE Certification Standards**

30.     NOCSAE is a non-profit organization founded in 1969 whose mission is to reduce athletic injuries and death through standards and certification for athletic equipment. Schools,

Plaintiff's Class Action Complaint

universities, and athletics associations look to NOCSAE certification standards for sports equipment, and helmets in particular, to protect players and enhance player safety.

31.    While NOCSAE publishes standards, it historically has not regularly conducted surveillance to assure compliance to the Standards. Instead, it has been up to helmet manufacturers to ensure compliance with the NOCSAE standards through testing conducted at their own expense. According to NOCSAE, surveillance to assure compliance to the standards is the sole responsibility of firms/manufacturers that affix the NOCSAE seal of certification to their headgear or equipment. This includes ongoing statistically relevant quality control protocols.

32.    Manufacturers that place stickers indicating NOCSAE certification onto helmets and other athletic equipment affirmatively represent to NOCSAE, the associations, and consumers that the equipment meets all requirements of the applicable NOCSAE certification standards, and accordingly, the minimum safety standards set forth by the NCAA, NFHS, USL, and other sports governing bodies that have adopted the NOCSAE certification standards.



33.    For the lacrosse helmets at issue, the applicable NOCSAE standard is ND041: Standard Performance Specification for Newly Manufactured Lacrosse Helmets with Faceguard.[1] For each test report, at least one set of four helmets of each model in each critical size must be tested. Two are to be tested at high temperature, and two are to be tested at ambient temperature.

_____

[1] Faceguards themselves must be separately tested to, and comply with, NOCSAE standard ND045 on the same helmet model as presented for testing under ND041.

34.    Pursuant to ND041, lacrosse helmets must first pass a Helmet Stability/Retention test. For this test, helmets are placed on a helmet stability stand similar to the one depicted below using only the primary retention system adjusted as described in the manufacturer's instructions. A cable and attached hook connect the guide rod to the far edge of the helmet. With the headform canted downwards at a 45 degree angle and facing the floor, a 9-pound drop mass is set up to pull on the back edge of the helmet when dropped from a height of 2.78 feet (.85m). The helmet must remain on the headform upon the completion of this test.



35.    The helmets are next subjected to various Impact Attenuation "Helmet Drop" tests. Impact locations at the front, side, right front boss, right rear boss, rear, and top of the

helmet are tested as shown in the figures below. The helmets are impacted at various velocities

ranging from 11.34 feet/second to 17.94 feet/second. Impacts are rated using a "Severity Index,"

or "SI," which is defined by ND001 as $SI = \int_{0}^{T} A^{2.5} dt$ where "A" is the instantaneous

resultant acceleration expressed as a multiple of g (acceleration of gravity); "dt" are the time

increments in seconds; and the integration is carried out over the essential duration (T) of the

acceleration pulse.

Plaintiff's Class Action Complaint

IMPACT LOCATIONS – HELMET DROPS



**Front**



**Side**



**Right Front Boss**



**Right Rear Boss**



**Rear**

**Figure 3**



**Top**

Plaintiff's Class Action Complaint

IMPACT LOCATIONS



36.    In order to pass the test, the peak Severity Index, or SI, of any impact shall not exceed 1200 SI. For the 11.34 feet/second impacts, the SI must not exceed 300 SI. A passing helmet model is able to withstand all impacts at an acceptable SI as outlined above, and must meet all other requirements when tested in accordance with the performance specification. Results from ND041 are reported solely on a pass/fail basis.

37.    According to the NOCSAE standards, manufacturers desiring to use the NOCSAE logo to certify a helmet must, prior to the first time the helmet is offered, submit documentation in the form of a test report from an independent A2LA accredited ISO 17025 certified laboratory showing compliance with the applicable testing criteria (in this case, ND041). In addition, NOCSAE requires that at least annually, manufacturers provide proof of ongoing compliance. Manufacturers must also have an executed, valid license agreement with NOCSAE to use any of the NOCSAE logos at any time.

C.  **Warrior and the Regulator Helmet**

38.     The Warrior Regulator helmet was released in approximately October 2013 and retailed for upwards of $200. According to Warrior's marketing materials, the Regulator helmet's "new Viconic Energy Absorbtion System (EAS) . . . blends performance and fit with road-tested force reduction for the game's hardest hits," and was "co-developed with the market leader in automotive head impact protection technology."

39.     The Warrior Regulator helmets were also advertised and sold with the NOCSAE certified logo, representing compliance with minimum safety standards as required by all organized lacrosse leagues in the United States.

40.     The Warrior Regulator helmets have been used by tens of thousands of players ranging from grade school age to those on top NCAA teams.

41.     In reality, the Warrior Regulator helmets fail to provide even minimal impact performance, as they do not meet the minimum NOCSAE safety requirements for lacrosse helmets.

D.  **NOCSAE Decertification and Subsequent Fallout**

42.     Subsequent to the Regulator helmet's release to the market, NOCSAE was informed that when re-tested at different NOCSAE certified laboratories, the Regulator helmets being sold to consumers in the marketplace failed to meet the performance standards specified by ND041.

43.     NOCSAE subsequently opened an independent investigation of the Warrior Regulator helmet, whereby it reviewed Warrior's internal certification testing and quality control data. NOCSAE also purchased Warrior Regulator helmets independently through various retail sources and sent them to its own contracted laboratory for testing. All eight helmets tested

Plaintiff's Class Action Complaint

independently by NOCSAE's lab failed to meet the performance standards specified by ND041, with failure ranges reaching as high as 2945 SI, which is more than 1700 SI above than the maximum 1200 SI permited under NOCSAE standards.

44. On November 24, 2014, NOCSAE announced that as a result of its investigation, the Warrior Regulator helmet does not comply with NOCSAE standard ND041 and that the NOCSAE certification claimed by the manufacturer for the Regulator helmet was invalid. NOCSAE subsequently informed USL, NFHS, and NCAA of its findings.

45. In response to NOCSAE's announcement, Warrior issued a statement proclaiming that they "disagree with and are disappointed in NOCSAE's decision. Warrior has always been committed to the highest safety standards for our products."

46. Subsequent to NOCSAE's decision to declare the NOCSAE certification of the Warrior Regulator helmets void, USL warned coaches, parents, and players not to use the Warrior Regulator helmets or allow them to be worn in games, and alerted tournament officials to remove any player wearing a Warrior Regulator helmet.

47. On December 4, 2014, NOCSAE sued Warrior in the United States District Court for the Western District of Missouri, alleging that Warrior's use of the NOCSAE seal violated applicable trademark, breach of contract, and consumer protection laws and seeking injunctive and declaratory relief against Warrior for its improper claims regarding the helmets' NOCSAE certification. In the Complaint, NOCSAE alleges that subsequent to being notified of NOCSAE's findings concerning the Regulator helmet,  Warrior failed to demonstrate statistical compliance of the Warrior Regulator helmet with the applicable NOCSAE standards, failed to propose an alternative course of action to deal with the helmets' noncompliance (such as reporting the failure to the Consumer Product Safety Commission and issuing a recall, replacement, or other

action), and failed to complete a QA/QC audit with NOCSAE's independent testing laboratory. The action remains pending.

48.     Rather than offer meaningful relief to purchasers of the decertified Regulator helmets, Defendants instead focused their efforts on the launch of a new model of lacrosse helmet, the "Regulator 2" helmet. The "Regulator 2" helmet is currently being sold and marketed to consumers as compliant with the applicable NOCSAE standards. Rather than offer meaningful relief to aggrieved purchasers of the now-decertified Regulator helmets, Defendants are instead urging such consumers to spend additional money to purchase Warrior's new Regulator 2 helmets. However, Defendants have also disclosed that inventory levels of the Regulator 2 helmet are insufficient to keep up with demand from consumers who must purchase replacements for their now-decertified Regulator helmets. Furthermore, to date, Warrior's website still contains marketing and purchase information for the now-decertified Regulator helmets. Instead of notifying prospective consumers that the now-decertified Regulator helmets are not approved for use in organized lacrosse activities, Warrior simply removed the statement that the helmets meet the NOCSAE standards.

49.     Plaintiff and Class members paid Defendants for impact-resistant Warrior Regulator that were NOCSAE certified as required for organized lacrosse play.

50.     The Warrior Regulator helmets failed to meet the representations and warranties advertised to Plaintiff and Class members.

51.     Plaintiff and Class members are increasingly harmed as more time lapses because they are unable to use the Warrior Regulator helmets in sanctioned lacrosse play.

Plaintiff's Class Action Complaint

## CLASS ALLEGATIONS

52.     Plaintiff brings this action on behalf of herself, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

All persons in the United States who purchased Warrior Regulator lacrosse helmets.

In the alternative, Plaintiff seeks to represent the following state-specific class:

All persons in Michigan who purchased Warrior Regulator lacrosse helmets.

53.     <u>Numerosity</u>:  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes and on that basis alleges that there are tens of thousands of members of the Class who purchased Warrior Regulator lacrosse helmets.

54.     <u>Ascertainiblity</u>.  Class members can be easily identified from Defendants' sales records and warranty databases, as well as the sales records and warranty databases of Warrior's network of authorized retailers and distributors.

55.     <u>Existence and Predominance of Common Questions of Fact and Law:</u> Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to: whether Defendants' fraudulently represented the results of the NOCSAE testing for the Warrior Regulator helmet; whether Defendants issued and placed false certifications on the Warrior Regulator helmets sold to the Class; whether the Warrior Regulator helmets sold to the public are materially different from the helmets used in the NOCSAE testing for the Warrior Regulator helmet; whether Defendants' failure to ensure compliance with the NOCSAE minimum standards despite representations to the contrary is a breach of warranty;

Plaintiff's Class Action Complaint

whether the Warrior Regulator helmets were falsely advertised to the public as NOCSAE certified when in fact they were not in compliance with NOCSAE standards; whether Defendants' conduct constitutes unlawful business acts and practices; whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Warrior Regulator helmets, Plaintiff and members of the Class have suffered an ascertainable loss of monies and/or value; and, whether Plaintiff and Class members are entitled to monetary damages and/or other remedies, including but not limited to helmet rescission/replacement and consequential damages resulting from prohibition of the use of the Warrior Regulator helmet in lacrosse activities, and, if so, the nature of any such relief.

56.   Typicality:  All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and each member of the Class paid for a NOCSAE certified Warrior Regulator lacrosse helmet and did not receive a helmet that met NOCSAE minimum standards; and did not receive a refund or replacement helmet when the Warrior Regulator helmet was decertified. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' failure to deliver an impact-resistant NOCSAE certified Warrior Regulator helmet as advertised and warranted. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

57.   Adequacy:  Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class she seeks to represent, she has retained competent counsel who is highly experienced in complex class action litigation, and she intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

Plaintiff's Class Action Complaint

58.    Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of the Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for Class members individually to redress effectively the wrongs committed by Defendants.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' sales records and warranty databases as well as the sales records and warranty databases of Defendants' network of authorized Warrior retailers and distributors.

59.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED
### COUNT I
### BREACH OF EXPRESS WARRANTY

60.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

61.    The Warrior Regulator helmets are goods within the meaning of the Uniform Commercial Code.

62.     Defendants expressly warranted that the Warrior Regulator helmets met or exceeded NOCSAE's certification standards, and expressly demonstrated that certification through the visible placement of the NOCSAE certified logo on the outside of all Warrior Regulator helmets as well as reference to the NOCSAE certification in advertising and marketing materials.

63.     As demonstrated through independent testing, the Warrior Regulator lacrosse helmets were shown to fail NOCSAE's minimum certification standards for lacrosse helmets, and the Regulator helmet's NOCSAE certification was ultimately voided by NOCSAE.  This was a material breach of contract that caused damages to Plaintiff and Class members.

64.     The Warrior Regulator helmets purchased by Plaintiff and the Class did not perform as advertised, warranted, or promised by Defendants, constituting a breach of the express warranty between Defendants and Plaintiff and the Class.  As a result, Plaintiff and the Class members have suffered damages from Defendants' breach of warranty in the form of loss of investment and exposure to increased levels of risk when the helmets were used in lacrosse play without knowledge of their actual, substandard condition.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

65.     Plaintiff and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

66.     At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that the product be acceptable in trade for the product description.

Plaintiff's Class Action Complaint

67.     Notwithstanding the aforementioned duty, the Warrior Regulator lacrosse helmets sold to Plaintiff and the class were not merchantable, as they do not meet minimum NOCSAE safety requirements necessary for use in organized lacrosse play.

68.     Defendants received ample notice from NOCSAE itself that the Warrior Regulator lacrosse helmets were not merchantable and were not fit for use in organized lacrosse play within a reasonable time of NOCSAE's decision to decertify the helmets.

69.     As a result of the non-merchantability of the Warrior Regulator lacrosse helmets described herein, Plaintiff and other members of the class sustained a loss or damages.

## COUNT III
## COMMON LAW FRAUD

70.     Plaintiff and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

71.     Defendants made material misrepresentations and/or omissions concerning the impact performance, safety, and NOCSAE certification of the Warrior regulator lacrosse helmets.

72.     Defendants willfully failed to state material facts, and/or willfully concealed, suppressed, or omitted such material facts with respect to their testing protocols and results and their certification that the Warrior Regulator lacrosse helmets met minimum NOCSAE safety standards.

73.     Defendants willfully used exaggeration, falsehood, innuendo, and/or ambiguity as to material facts in its written representations.

74.     As a result, Plaintiff and the Class members were fraudulently induced to purchase the Warrior Regulator lacrosse helmets.

75.     These misrepresentations and/or omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and the Class members would rely on them.

76.     Plaintiff and the Class members reasonably relied on these omissions, and suffered damages as a result.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**

77.     Plaintiff and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

78.     Defendants supplied false information in order to induce Class members into sales transactions.

79.     Defendants continued to supply false information in order to prevent Class members from discovering the shortcomings of the Warrior Regulator lacrosse helmet, and actively concealed the true nature of the Warrior Regulator helmet from the marketplace.

80.     Defendants continued to supply false information to protect the Defendants' reputation in the marketplace in order to obtain more sales.

81.     Plaintiff and Class members reasonably relied on Defendants' false representations when purchasing Warrior Regulator lacrosse helmets.

82.     Defendants knew their statements were false when making them and that Class members' would reasonably rely on them when choosing to purchase a lacrosse helmet to be used in sanctioned lacrosse play.

83.     As a result of Defendants' actions, Plaintiff and the Class members have suffered economic damages including, but not limited to, loss of investment, exposure to increased safety

risk, and loss in opportunity to play sanctioned lacrosse activities due to the Warrior Regulator lacrosse helmet's true condition and invalid NOCSAE certification.

## COUNT V
## UNJUST ENRICHMENT

84.     Plaintiff and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This claim is plead in the alternative to the contract based claim.

85.     Plaintiff and the Class members conferred a benefit on Defendants by paying hundreds of dollars for each Warrior Regulator lacrosse helmet.

86.     Defendants had knowledge that this benefit was conferred upon them.

87.     However, Defendants have breached their warranties and representations by failing to deliver Warrior Regulator lacrosse helmets that are impact resistant and NOCSAE certified, as represented by Defendants prior to sale. Furthermore, Defendants have failed to deliver refunds or replacement products that perform as represented and advertised to Plaintiff and the Class.

88.     Defendants have been unjustly enriched at the expense of Plaintiff and the Class members, and their retention of this benefit under the circumstances would be inequitable. Defendants should be required to make restitution.

## COUNT VI
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

89.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

90.     The Michigan Consumer Protection Act ("MCPA"), MICH. COMP. LAWS § 445.901, *et. seq.,* is designed to provide a remedy for consumers who are injured by deceptive

business practices.  The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the act.  *See* MICH. COMP. LAWS § 445.911(3).

91.    Defendants' conduct in designing, marketing, and selling the Warrior Regulator lacrosse helmets constitutes conduct in trade or commerce under the MCPA.

92.    In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

93.    Plaintiff and members of the class relied upon Defendants' false and misleading representations and omissions.

94.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the Class members have suffered and will continue to suffer actual damages.

95.    Defendant's conduct alleged herein violates the MCPA, including, but not necessarily limited to the following sections thereof:

1. § 445.903 (1)(a), by causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2. § 445.903 (1)(c), by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

3. § 445.903 (1)(e), by representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

4. § 445.903 (1)(n), by causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

4. § 445.903 (1)(s), by failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not be reasonably known to the consumer;

3. § 445.903 (1)(bb), by making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

4. § 445.903 (1)(cc), by failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

96. As a result of Defendants' violation of the MCPA, Plaintiffs and members of the class have incurred damages.

97. Plaintiff demands actual, statutory, and treble damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiff as the Class representative and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and the Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order enjoining Defendants from continuing to sell the Warrior Regulator lacrosse helmet, appointing an independent party to provide a complete review of the impact resistance and NOCSAE certification status of all models of Warrior lacrosse helmets, and at a minimum, requiring Defendants to provide a full refund to purchasers of Warrior Regulator lacrosse helmets, or in the alternative, a replacement helmet that meets all of the advertised representations for the Warrior Regulator helmet, including NOCSAE certification;

F. award reasonable attorneys' fees and costs; and

G. grant such further relief that this Court deems appropriate.

2:15-cv-10716-LJM-RSW   Doc # 1   Filed 02/26/15   Pg 25 of 25   Pg ID 25

## JURY DEMAND

Plaintiff, on behalf of herself and the putative Class, demand a trial by jury on all issues so triable.

Dated:  February 26, 2015           Respectfully submitted,

By:    /s/Patrick E. Cafferty
CAFFERTY CLOBES MERIWETHER &
  SPRENGEL LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
Telephone: (734) 769-2144
Facsimile: (734) 769-1207
E-mail: pcafferty@caffertyclobes.com
Bar No. P35613
       -and-
Bryan L. Clobes
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Telephone: (215) 864-2800
Facsimile: (215) 864-2810
E-mail: bclobes@caffertyclobes.com

Nicholas E. Chimicles
Joseph G. Sauder
Alison G. Gushue
Andrew W. Ferich
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: Nick@chimicles.com;
      jgs@chimicles.com
      agg@chimicles.com
      awf@chimicles.com

Thomas B. Malone, Esq.
The Malone Firm, LLC
1650 Arch St., Suite 1903
Philadelphia, PA 19103
(215) 987-5200
***Proposed Lead Attorneys for Plaintiff and the Class***

H0042412.2        - 25 -        Plaintiff's Class Action Complaint